for 1 minute and 15 seconds per side, Mr. Hunter for the apology. Good morning, Rene Schecmer on behalf of the government. I'm reserving 6 minutes for rebuttal. Please proceed. Thank you. In this case, the government is appealing the grant by the district court of a 3582C2 motion, granting a sentence reduction based on the guideline amendment 782. In this case, it's the government's position that there was an abuse of discretion by the district court because the district court improperly applied the law. As the court is well aware, questions of law are subject to de novo review, so we have de novo review on the issue of what the law is, and then if there is error, that is an abuse of discretion by the district court. In this case, we have Joshua Smith, who was sentenced originally back in January of 2012. And at the original sentencing, the district court varied from the guidelines, and the variance was from the 18 to 1 ratio between cocaine and crack cocaine to a 1 to 1 ratio. Ms. Cobb is going to say there wasn't a variance, the district judges made a calculation of drug quantity. Right, and that's really the issue here. The entire issue comes to was it a variance or was there a factual finding that there was a drug quantity. In this case, we have a plea agreement. The plea agreement is docket record entry 62. In paragraph 4 of the plea agreement, there is a factual basis of guilt, which the defendant and the government stipulated to the facts and also that they need not be proven either at the time of the plea or at the time of the sentencing. And this is on page ID numbers 124 and 125. At that time, the parties stipulated in subsection C of paragraph 4 that the defendant distributed 112 grams of cocaine base, which we call crack. Subsection D distributed, the defendant distributed 381.849 grams of cocaine and 62.439 grams of cocaine base, also known as crack. In subsection E, the defendant distributed 437.95 grams of cocaine. Those total 174.439 grams of cocaine base, crack, and 819.799 grams of cocaine. Those are the quantities that were in the plea agreement stipulated to by the parties. Those were the quantities accepted by the district court when the district court accepted the plea agreement, which occurred in the sentencing transcript, record entry number 112 at page 322. That's also the quantities that are listed in the presentence report in paragraphs 42 and 50, and that's record entry 99 at page 269 and 270, to which there were no objections. There was no objections by any party as to the sentencing quantity listed in the presentence report. And the reason for no objections is because it was stipulated to in the plea agreement. So then we get to the sentencing. And at the time of the sentencing, after accepting the plea agreement, including the stipulations, the sentencing court stated not that she found a specific quantity. She accepted the quantities. She then stated, so that leads to my calculation of the guidelines, which are somewhat different from the calculation by the probation officer. I calculate the offense level based on a one-to-one powder-to-crack cocaine ratio, leading to an offense level of 25, and the criminal history category remains the same at 4, and then goes on to recalculate the guidelines. This is a recalculation of the guidelines based on a change between the 18-to-1 ratio, which is within the guidelines, to the judge's own one-to-one ratio. It's a policy disagreement, which you're contending is a variance. Exactly. It is a policy disagreement. We get that. So if you find that it is a policy disagreement, which the Assistant United States Attorney recognized in making an objection to the one-to-one ratio at the time of sentencing, and for which the district court did not correct the record and agreed by saying thank you, then you have to go with how do we then treat the 3582. In this case, we have to go back to this court's decisions in both Garrett and Taylor and determine what was the applicable guideline range before the district court varied. And then we determine was there a change in that applicable guideline range after the amendment 782 to something lower. In this case, there was. The government doesn't dispute that the guidelines were lowered. So if you use the correct original guidelines and there's a two-level reduction. The problem comes in is that because the district court varied using a one-to-one ratio, the district court ultimately sentenced the defendant to 96 months. That 96 months in prison is lower than the amended guideline range set forth by 782. And I would suggest to the court that the easy way to look at this is to ask, if the defendant was sentenced today, what would his guideline range be? His sentence of 96 months is already lower than what this defendant would be sentenced to today, which would be inclusive of the 782 amendments. And therefore, this defendant is getting a, did in fact get a windfall at the original sentencing and got a lower sentence than many defendants across the nation because of the use of the one-to-one ratio, which was within the district court's prerogative. However, now we are in a situation where the district court does not have the prerogative to continue on with that one-to-one ratio. Because sentence reductions under 3582 are very circumscribed and must be in accordance with the law and with the policy of the United States Sentencing Commission. And in this case, the policy of the United States Sentencing Commission found that United States Code, excuse me, United States Sentencing Guidelines Section 1B, 1.10, is that any determination must be made without regard to departures or variances. So, it's the government's position that the one-to-one ratio was a variance and it is not allowed for consideration. I would answer any other questions that you might have. I have none. Thank you. Thank you. Good morning. Britt Cobb from Grand Rapids, Michigan, representing Mr. Smith for purposes of this appeal by appointment. So, I cannot take any credit for the good work that the lawyers did regarding his sentence before me. I would have to disagree with my friend, Ms. Schechmer, that what the district court did here was vary. I think calling this a variance is contrary to what the district court did. Policy disagreements on one-to-one are almost by definition variances, so you have to convince us why it isn't. As I understand your argument is, it wasn't varying. She was actually making a different drug quantity calculation. So, where do we find in the record that she rejected the drug calculation as opposed to the ratio? And if so, what was the new drug quantity that she found? Because that doesn't seem to appear in the record. The way I read the sentencing hearing transcript is she came out on the bench. She had a pre-sentence report in front of her that said, we think sentencing responsibility is 800 grams of powder cocaine, 175 grams of crack cocaine, which leads you to a certain base offense level. Judge Neff said, I have the pre-sentence report. This is how it calculates the guidelines. They dealt with an objection to leadership, on which there was testimony and that type of thing. She found that the leadership enhancement applied. And then she said, so that leads me to my calculations of the guidelines, which I am calculating differently than that which is in the pre-sentence report. And I'm using a one-to-one ratio. Because she had a policy disagreement with the calculation made by the probation officer. But she didn't say that. She said, I'm calculating it differently. If she had said she had a policy-based disagreement with it, I think we would be in a different boat. If this had been a case where it was all crack cocaine and not predominantly powder cocaine, we would have been in a different boat. If this were a case where Mr. Smith himself was found with all these quantities of cocaine, such that we weren't having to estimate what the sentencing responsibility actually should be, I think we would be in a different boat. But all of these factors, without any expression on the part of the district court that it actually was a policy-based disagreement, leads to the conclusion that she was making a finding of what the appropriate level of responsibility was under the guidelines for Mr. Smith at sentencing. Let me ask it another way. And I may say this wrong. I may get you more confused. But let me try anyway. You've got the drug quantity, whatever it was. Then you do certain things with that drug quantity to end up calculating a guideline range. Your argument is she didn't accept the actual drug quantity. It seems to me she did accept the drug quantity. She just simply used a different ratio that was applied to the quantity. That seems to me to be significantly different than finding the quantity was different. She said, I'm going to treat it all as powder cocaine. And I think on the record here, when you look back... But she didn't say that the crack wasn't crack, it was powder. True. So the guideline calculation, absent her deciding to use a different ratio, is based upon the quantities set forth in the plea agreement, is it not? I believe on the quantities set forth in the pre-sentence report. I guess I would disagree. Even applying one-to-one, it's the same quantities that you had stipulated to in the plea agreement. It's the same overall numbers of grams. Okay. So why don't we then calculate what the guideline range would be based upon that for purposes of 782? Well, because that's not how she did it. And when we talk about variances, what we are usually talking about, what we always are talking about per the definition to the authority of the court and under the guidelines, is when a judge calculates the guidelines, going through the technical aspects as it must, and then decides that it's excessive, so then recalculates it or alters the guideline range in some way to come up with a new guideline range  I thought just a variance is that you vary from the guidelines. You can't. You don't make them up new guidelines for yourself. No, but in a situation like this, she could have said, I do agree that this is the correct calculation under the guidelines, as Ms. Schechmer suggests, and then I'm recalculating them based on my own perception of how it should be. But she never said that. That's the definition of a variance. Right. But the problem is a practical one, because if we then say this wasn't a guideline calculation based on a specific finding at sentencing, what is the proper calculation? We're not really in the business of saying... We do it all the time here. Why isn't the proper calculation the quantities that you agreed to times the ratio that was existent at the time that she chose not to use? Because the authority that I've read from this court is what we want to look at in these 3582C2 proceedings is what the court found at sentencing. So then it's really just kind of a plug-and-play situation. What was the quantity used at sentencing, and was that what the sentence is based on, and has that now been changed? Because I get the sense from reading opinions out of the court on these sentence modifications that what you're really not wanting to do is go back and qualify or evaluate. What's the best case that you have that supports the interpretation that you're giving us? Well, I... You say you're reading our cases, and this is how you interpret what we're trying to do. I'm thinking about the Valentine cases, McKinney, those cases where they're saying, Look, go back and see what did the district court do? Okay, so it's Valentine, and McKinney is the answer? Those would be the ones that say this is what you used. Thank you. You look at that. But some of the other cases, I think, that have come out more recently support that position as well. Ms. Schechmer talked about the Garrett case, also Taylor. And what the court really seems to want to do is not worry so much about how they got there in the Rule 11c plea agreement in Garrett, but where they got to, and then be able to take that, take that base offense level upon which the sentence was based, and plug in the new numbers. So that is my sense from the court. It seems like we're in an interesting quandary here because it looks, at least superficially, like this is a variance, but you say, well, she didn't say it was a variance. Okay, I agree with that. So you then say, therefore, she's adjusting the drug quantity, but she didn't say she's doing that either. True. So what do we do? We affirm, don't we? I think affirming is a great answer. You've got to be a little more persuasive than that. One-to-one. It's sort of these magic words, right? We all heard it a lot several years ago when we were going through all these changes and after Spears and when the district courts were given the authority to vary across the board based on a policy-based disagreement. And I can't disagree that this whole concept of a one-to-one ratio and those magic words are used a lot in authority that the government cited as well as in Spears and I'm sure other cases that the court has seen. Did you agree with me just a moment ago that she didn't really tell us exactly whether she was varying or making a drug quantity? I think you did, didn't you? Well, she didn't say she was varying, and she didn't say she was making a quantity determination. The reason I'm asking you is you want us to look at Valentine. Valentine, in your own brief, says, quote, if the record indicates there was a finding of a specific quantity of drugs, which it seems as if there was not, either because the original sentencing judge made a specific finding, which he didn't, or because the defendant admitted to a specific quantity, which he did, then the modification court must use that quantity and determine whether applying the retroactive amendment has the effect of lowering the guideline range. Don't you lose under Valentine when you have a plea agreement that stipulates as to a drug quantity and the judge doesn't tell us specifically that she's changing the drug quantity? The plea agreement was not binding, and it specifically had the standard paragraph that I see out of the Western District in it that said, we are agreeing that these are facts that need not be proven at sentencing, but the district judge has the ability to determine what guidelines apply, and solely the district judge, and there are no promises, there are no agreements as to what the guidelines apply here are. This was a situation where this doesn't need to be proven any further at sentencing. Judge Neff did say she wasn't varying. She did say she wasn't departing. When you look at not only the sentencing. She said specifically it wasn't a variance? Yeah. Where is that? She didn't say it was a variance, but I didn't recall she said it wasn't. It's at the end of the sentencing transcript where she's addressing a number of other variance requests made by the defense, and she said in no uncertain terms there's no reason to vary or depart. In connection with these other requests? In connection with the other requests. And then on the statement of reasons where they list this is why we're doing what we're doing, what it says is the pre-sentence report was adopted with the following changes. We're using a one-to-one crack, powder, cocaine ratio, which reduces the offense level to 25 from 27. And then, of course, the rest of the statement of reasons are all these boxes to check. Did you vary? No. Was this within a guideline sentence? Yes. So the irony here, Ms. Cobb, is it seems to me that your client's already gotten the benefit of the reduction to one-to-one and now wants to double down on that reduction. So I understand why you would like that, but why is that not what's happening here? Only if you look at it as he got the benefit of the ratio as a variance and not as a quantity determination for purposes of sentencing. Ignore for purposes, just looking at the big picture here for just a second, ignore whether it was or wasn't a variance. He's already gotten the benefit for which 782 is intended, has he not? Which was the use of the one-to-one ratio. Well, I respectfully disagree with that because 782 was an across-the-board reduction. It wasn't just for crack, cocaine. It was for all drug offenses. So whether it was heroin or... How does that help you? Well, because he was predominantly responsible factually for powder cocaine. Let me try it one more time. 782 was to give you the benefit of a one-to-one ratio in the calculation, right? I think 750 was the one that really brought down just the crack guidelines. I see 782 as being the one that did an across-the-board two-level reduction for everybody. And for somebody that's responsible, even assuming that what the government says is true, for this breakdown. 782 doesn't give you an across-the-board reduction for things other than the one-to-one ratio, does it? I believe it does, Your Honor. That's your argument? Okay. Well, no, my understanding is that every level... That's how you respond to the double-down argument. Well, right, because he hasn't gotten any benefit of the across-the-board reduction related to all the powder cocaine for which he was predominantly responsible under any view of the record. I see. Okay. Thank you. Anything else? Thank you. With regard to the Statement of Reasons, the Court specifically stated in the Statement of Reasons that the Court finds the defendant's base offense level shall be calculated at a one-to-one powder cocaine-to-crack cocaine ratio,  So even the Statement of Reasons shows that the Court is not recalculating the drug quantity. There is no different drug quantity finding anywhere. It's in the plea agreement. The Court accepted it. It's in the pre-sentence report. The parties didn't object. Even the district court doesn't object to the pre-sentence report's computation of the drug quantity. The only issue is how are we going to calculate that in terms of a guideline range and giving it a number, and the Court is specifically stating they're using the one-to-one ratio. This case sits in a kind of unique situation because it was shortly after the 18-to-one ratio had been adopted, so we normally would see the one-to-one coming in when it was a hundred-to-one ratio. But after the 18-to-one ratio was adopted by the Sentencing Commission, then we stopped seeing the one-to-ones as much. This case came shortly after that. We still have this one-to-one ratio, but it's a variance. It's been recognized. This Court can take judicial notice of it. Institutional memory going back years that this has always been considered a variance. The reason it's a variance is because it was a policy disagreement. One of the things— This is a one-off, which you sort of suggested. You have to get the permission from the Solicitor General to even appeal this, right? Yes, I did. Is there something going on in the background that we're missing here? Why are you even appealing this? I say it's a one-off. As a matter of fact, in our district, this particular district, judge sometimes gives the one-to-one, sometimes just goes with the guidelines at 18-to-one. I was only mentioning the fact that there was some confusion in the initial pre-sentence report because I guess the initial one was prepared and it was a hundred-to-one, then there was a change. It was made to 18-to-one. So when the judge was doing the one-to-one, this is a throwback to when there was a hundred-to-one. She still does do that occasionally, go to the one-to-one. So I can't say it never happens. It still does happen in our district. The issue here is not what the court is doing at the sentencing. We didn't appeal. We did object at the sentencing. The issue here is what limitation does this have later at the 35-82? The 35-82 is a very, very limited remedy. It's only available to people who meet the criteria. And this defendant, by getting the one-to-one, has already gotten a lower sentence than he would get if he were sentenced today under the guidelines. He should not be getting the benefit of a variance to one-to-one plus two more points when there's no way to justify that under the guidelines. So we would ask that you reverse. All right. I think we understand both of your positions. Ms. Cobb, we see that you're appointed under the Civil Justice Act. I want to appreciate your service to your client and to the duty you're performing to the court here as well. Thank you. That, I believe, completes our argued cases. So please adjourn the court.